Application of Joseph A. HOULIHAN for
the Return of Property Illegally Seized,
and for the Suppression of Evidence.
Civ. No. 3916.

United States District Court
D. North Dakota,
Northeastern Division.

Aug. 15, 1962.

Robert Vaaler of Day, Stokes, Vaaler & Gillig, Grand Forks, N. D., for petitioner.

John O. Garaas, U. S. Atty., and Glenn K. Swanson, Asst. U. S. Atty., Fargo, N. D., for the Government.

RONALD N. DAVIES, District Judge.

The Petitioner, Joseph A. Houlihan, has applied to this Court for an order directing return of all personal property allegedly unlawfully and illegally seized from him by Internal Revenue Service agents and its suppression as evidence against him in any criminal proceedings, pursuant to Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.A.

A hearing was held, and after the taking of testimony and submission of evidence, Petitioner's application was taken under advisement. Since there are substantial issues presented, a detailed statement of facts is necessary.

The Petitioner is a resident of the City of Grand Forks, County of Grand Forks, State of North Dakota. On December 1, 1961, two special agents of the Intelligence Division of the Internal Revenue Service appeared before the Judge of the County Court, Cass County, State of North Dakota, which is a state court of record, seeking a warrant to search the person of the Petitioner Houlihan and his residence in Grand Forks. An affidavit executed by one of the agents was presented to the Judge and reads:

"Ray Wilwant, being first duly sworn, deposes and says:

"He is a Special Agent of the Intelligence Division, Internal Revenue Service residing at Fargo, North Dakota;

"That he has reason to believe that on the premises known as 127 Conklin Avenue, in Grand Forks, Grand Forks County, State of North Dakota, further described as the residence of one Joseph A. Houlihan, wherein the said Joseph A. Houlihan is presently residing and domiciled, there is now being concealed certain property, namely bookmaking records, wagering paraphernalia consisting of bet slips, run-down sheets, account sheets, recap sheets, odds sheet, and other records pertaining to wagering operations, which are being used in violation of Sections 4411, 4412 and 7203 of the Internal Revenue Code of 1954. [26 U.S.C. A. §§ 4411, 4412, 7203].

"The facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:

"That on the 1st day of December, 1961, I received confidential information, considered reliable, that a bookmaking operation was operating at Grand Forks, North Dakota, Joseph A. Houlihan, a bookmaker known to me by reputation, was, according to the information, head of said operation. This confidential informant on November 24th, 1961, placed bets totalling $300.00 with said Joseph A. Houlihan, and has prior to said time periodically within the past three months has repeatedly placed bets in various amounts with said Joseph A. Houlihan.

"Affiant further alleges that the tax or taxes imposed by law for operation of said business so conducted as aforesaid has not been paid."

Based upon this affidavit the following warrant was issued:

"TO: Ray Wilwant and Walter P. Buck, Special Agents of the Intelligence Division, United States Inter-

nal Revenue Service for the District of North Dakota, and to their Deputies and Agents

"Affidavit having been made before me by Ray Wilwant of Fargo, North Dakota, Special Agent of the Intelligence Division, Internal Revenue Service, that he has reason to believe that:

"The person of Joseph A. Houlihan of Grand Forks, North Dakota, and his residence described as 127 Conklin Avenue, in the City of Grand Forks, in the County of Grand Forks, and State of North Dakota, there is now being concealed certain property namely:

"Bookmaking records, wagering paraphernalia consisting of bet slips, run-down sheets, account sheets, recap sheets, odds sheet and other records pertaining to wagering operation which are being used in violation of Sections 4411, 4412 and 7203 of the Internal Revenue Code of 1954 and I am satisfied that there is probable cause to believe that the property so fitted and intended to be used is being concealed on the person of said Joseph A. Houlihan and on the premises above described, and that the foregoing grounds for application for issuance of the search warrant exist.

"YOU ARE HEREBY COMMANDED to search forthwith the person and place named for the property specified, serving this warrant and making the search in the daytime and if the property be found there to seize it, leaving a copy of this warrant and a receipt for the property taken, and prepare a written inventory of the property seized and make a return thereto to me as required by law."

On December 2, 1961, the special agents searched the person of the Petitioner and the premises described in the warrant, and the following return was made:

"I received the attached search warrant on December 1, 1961, and have executed as follows:

"On December 2, 1961, at 11:15 a. m. Special Agent Walter P. Buck and I searched the person and premises described in the warrant and I left a copy of the warrant with Joseph A. Houlihan, at the place of search together with a receipt for the items seized.

"The following is an inventory of property taken pursuant to the warrant:

"1 Address book—Inscription Jamieson and Company
1 Address book
1 Spiral Note Book #490, Listing daily gains and losses
1 Telephone Book
1 Letter and envelope (Jamieson and Company)
1 Large sheet of paper showing computation table published by Arcadia Sales and Publishing Co., Chicago 1, Ill.
1 Personal Card—Linus J. Hammond, St. Paul, Minnesota
2 Note pads (3" x 5")
2 Envelopes with rate sheets on sporting events, Athletic Publications, Inc., Minneapolis 3, Minnesota

"This inventory was made in the presence of Joseph A. Houlihan.

"I swear that this inventory is a true and detailed account of all the property taken in compliance with the warrant."

The property listed in the return is the subject matter of Petitioner's application. Even though this proceeding was instituted prior to the Petitioner being indicted or an information filed against him, this Court has jurisdiction to dispose of the matter at this time.

Austin v. United States, 297 F.2d 356, 4th Cir., 1961.

The Petitioner urges that (1) the warrant is insufficient on its face, (2) the property seized is not that described in the warrant, and (3) the warrant was illegally executed. At the time of hearing a fourth ground was raised by Petitioner, alleging that probable cause did not exist upon which the search warrant could issue. Petitioner attacks the insufficiency of the warrant on its face, alleging that the Judge of the Cass County Court has jurisdiction only within the boundaries of Cass County, and therefore, could not issue a warrant to be executed in Grand Forks County, North Dakota. The narrow question presented in this connection is whether the word "district" as used in Rule 41(a) refers to the state jurisdictional limitation or to the Federal district within which the County Court sits.

The Sixth Circuit in Graham v. United States, 257 F.2d 724, when confronted with this question, while granting this contention had merit, decided the case on other grounds. In United States v. Muncey, D.C., 185 F.Supp. 107, the Court did not reach the question and held that whether such a warrant is valid beyond the state judicial circuit of its issue turns on the language of the state constitution or statute; and as Circuit Judges of Tennessee are Judges for the state at large, a warrant issued by a Circuit Judge was valid in another county of the state other than that in which his court was located. The holding that Circuit Court Judges of Tennessee are Judges for the state at large left it unnecessary to determine whether "district" refers to the state judicial circuit for which the State Judge is elected or the Federal District in which the court sits.

In Weinberg v. United States, 2 Cir., 126 F.2d 1004, 1006, an order issued by the District Court of the United States for the Eastern District of Michigan for a search and seizure of property in the Southern District of New York was declared to be illegal. The Court held that:

"* * * Hence, even though the statute, 18 U.S.C.A. § 611, authorizing the issuance of search warrants, does not contain an express limitation of the district court's power to its own district, that seems clearly understood, in view of the constitutional provisions and the general rule of territorial limitation. We, therefore, cannot hold silence to mean that search warrants may be used anywhere in the country."

 Applying the rationale of Weinberg, a search warrant issued by a Judge of a County Court in the State of North Dakota is good only within that county. The word "district" as used in Rule 41(a) refers to the state jurisdictional limitation and not to the Federal District in which the state courts sits. I hold as a matter of law that the issuance of a search warrant by the Judge of the Cass County Court for execution in Grand Forks County is illegal and invalid.

Petitioner next contends that the property seized is not that which was described in the search warrant. In Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d 539, 540, (1961), the United States Court of Appeals for the District of Columbia Circuit held:

"An officer engaged in a lawful search is not confined to seizing only those items described in the warrant, especially where the unlisted items seized are instrumentalities of a crime. 'The Fourth Amendment provides that the warrant must particularly describe the "things to be seized." But it is well established that given a lawful search some things may be seized in connection therewith which are not described in the warrant * * *.' Palmer v. United States, 1953, 92 U.S.App.D.C. 103, 104, 203 F.2d 66, 67. See also Bryant v. United States, 5 Cir., 1958, 252 F.2d 746. 'This Court has

frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed * * *.' Harris v. United States, 1947, 331 U.S. 145, 154, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399."

■ The question then is not whether the property seized was that described in the warrant but whether the property seized is the means or the instrumentality by which a crime is committed.

Under Rule 41(b) (2) the property seized must be "designed or intended for use or which is or has been used as the *means* of committing a criminal offense." The property described in the warrant here was allegedly being used in violation of Sections 4411, 4412 and 7203 of the Internal Revenue Code of 1954. Section 4411 imposed a tax on each person engaged in the business of accepting wagers; Section 4412 requires each person subject to payment of the tax to register with the official in charge of the Internal Revenue District; and Section 7203 makes it a misdemeanor to violate either Section 4411 or Section 4412. (Italics supplied.)

■ It is not here contended that possession of the articles seized from the Petitioner was or is a crime. At the hearing both special agents testified that possession of the property seized was not in itself illegal and that some of the articles *could be* used for wagering purposes. The Sections of the Internal Revenue Code, 1954, which Petitioner was allegedly violating do not make it a crime to engage in wagering operations but simply impose a tax and require the party to register. Property not being used as the *means* of committing a crime is not properly the subject of a search warrant.

The property is merely evidentiary material, and a search for evidence, as such, violates the Fourth Amendment to the Constitution. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. (Italics supplied.)

■ Finally, there is the question of whether there was probable cause upon which the warrant could issue. The Judge of the Cass County Court, in issuing the search warrant, relied upon the facts set forth in the special agent's affidavit. Although hearsay evidence may be considered, there must be substantial basis for crediting the information. Previous reliable information from the same source would provide substantiation. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. Here there was no substantial basis given for crediting the hearsay evidence save and except the bare statement of the special agent that he considered the information reliable. This I consider insufficient.

Petitioner's motion to suppress with respect to the evidence obtained in his home during the course of the search by the special agents of the Internal Revenue Service is granted, as well as any information or data taken from Petitioner personally and as it relates to the check or checks from which certain names were obtained by the special agents at the time of the unlawful search and seizure.

IT IS ORDERED, for the reasons assigned, that all evidence seized from the Petitioner be, and it is hereby suppressed, and its use for any purpose against this Petitioner is specifically forbidden.

IT IS FURTHER ORDERED that any data, such as were informally taken from Petitioner as the result of notations made by the special agents from checks in Petitioner's possession, be suppressed and its use for any purpose against Petitioner is specifically forbidden.

IT IS FURTHER ORDERED that sixty days from the date of filing this order,

the Clerk of this Court shall, by registered or certified mail, return to Petitioner all of the evidence herein ordered suppressed unless, in the interim, the United States shall have properly perfected an appeal herefrom to the Eighth Circuit Court of Appeals.