In the Matter of Morris E. **PLATO** and Ruth C. Plato, Petitioners and Movants,

v.

Nicholas deB. **KATZENBACH**, Attorney General of the United States, Justin J. Mahoney, United States Attorney, Northern District of New York, Sheldon S. Cohen, Commissioner of Internal Revenue, John E. Foley, District Director of Internal Revenue, John R. O'Reilly, Special Agent and George M. Kamide, Revenue Agent, Respondents.

Civ. A. No. 65–CV–113.

United States District Court
N. D. New York.

May 2, 1966.

Hancock, Ryan, Shove & Hust, Syracuse, N. Y., for petitioners and movants.

Justin J. Mahoney, U. S. Atty., for respondents.

PORT, District Judge.

The above entitled proceeding, designated petition and motion pursuant to Rule 41 of the Federal Rules of Criminal Procedure, alleges in the petition and supporting affidavits that in the course of an investigation of their income tax liability, agents of the Internal Revenue Service unlawfully seized records and documents belonging to the petitioners. They seek in this motion to enjoin permanently the respondents and anyone acting under or through them from instituting any criminal, civil or administrative action based upon said records or any information derived from them. The petitioners also seek an order compelling the return of their allegedly illegally seized property.

At the same time this motion was filed, the petitioners filed a complaint in this court naming themselves as plaintiffs and the above respondents as defendants. The allegations of the complaint filed are substantially and largely a verbatim repetition of the allegations contained in the petition and motion herein. The relief sought in the complaint and under the motion is the same. On the return day of the 41(e) motion, the respondents, named as defendants in the civil action, moved to dismiss the complaint for lack of jurisdiction. That motion was rendered moot by the consent of the plaintiffs to a dismissal, the prop-

erty in question having been previously returned to the plaintiffs.

There is left for decision the statutory remedy available in criminal cases; the motion to suppress under Rule 41(e) F.R.Crim.P.

Except for the allegation that special agents of the Intelligence Division have participated in the investigation of the movants' tax liability, there is no evidence indicating that the government intends to prosecute the movants criminally. The steps and intra- and interdepartmental recommendations which precede the transmission of a file to the United States Attorney for presentation to a grand jury are many. The administrative sieves through which the case must successfully pass, from the time it emerges from the special agents hands to its receipt in the United States Attorney's office, become of a progressively finer mesh. (See Baltar, Fraud under Federal Tax Law, C.C.H.—Chapter III; Mertens' Law of Federal Income Taxation, Zimet Revision. Vol. 10, Chap. 55A–p. 3, fn.)

Conduct on the part of the investigating agents which results in an illegal seizure thereby depriving the government of use of such illgotten evidence and its poisonous progeny should be recognized by the legal staffs examining the case on its administrative journey from field investigation to ultimate recommendation for presentation to a grand jury. Such recognization, absent other sufficient evidence to sustain a conviction, should result in the end of the road for any criminal prosecution.

The petitioners while not explicitly abandoning their claim that this proceeding entitles them to the relief requested in connection with a civil tax proceeding, implicitly do so. In distinguishing Zamaroni v. Philpott, 346 F.2d 365 (7 Cir., 1965) cited by the respondents, the petitioners in their brief state, "Zamaroni v. Philpott is inappropos because that case apparently was purely a civil tax matter, not involving a criminal investigation and

hence outside the protective pole (sic) of Rule 41(e) of the F.R.Crim.P.".

That the court has jurisdiction to entertain the motion under Rule 41(e) in the preindictment stage is not strenuously questioned by respondents but they urge a dismissal without prejudice.

The petitioners lean heavily on Lord v. Kelley, 223 F.Supp. 684 (D.C.Mass., 1963), appeal dismissed 334 F.2d 742 (1 Cir., 1964) and Austin v. United States, 297 F.2d 356 (4 Cir., 1961). Austin reversed a dismissal by the district court of a petition to enjoin the United States Attorney from presenting evidence allegedly obtained in violation of the petitioners' constitutional rights under the Fourth and Fifth Amendments. The district court apparently "was of the opinion that it would be inappropriate to suppress such evidence prior to indictment * * *." 297 F.2d at p. 357. The Court of Appeals in Austin held that such action could be maintained "in anticipation of indictment." In support of this position, the court cited In re Fried, 161 F.2d 453, 1 A.L.R.2d 996 (2 Cir., 1947), in this circuit extending the right to suppress constitutionally infirm confessions prior to indictment.

The Court of Appeals in Austin required the district court to hold an evidentiary hearing, "[u]nless [petitioner's] allegations clearly show that, even if true, he would be entitled to no relief."

Austin's persuasiveness is somewhat diminished by the court's subsequent recall of its mandate and dismissal of the appeal. (See Austin v. United States, 353 F.2d 512 (4 Cir., 1962); Smith v. Katzenbach, 351 F.2d 810, 815, n. 5 (D.C. Cir., 1965).

■ Assuming jurisdiction, even on a discretionary basis, does not do violence to either the Rule or its equitable lineage. However, that does not require the grant of an immediate hearing. Both the rule and its equitable roots permit flexibility in the timing of indicated hearings. Smith v. Katzenbach, supra.

Only a small percentage of the investigations of the Intelligence Division result in criminal cases. In 1961 more than 15,000 cases were actively investigated, resulting in 3588 completed full scale investigations, which in turn resulted in the indictment of 1484 individuals. See I.R.–452 (2–15–62), Mertens' Law of Federal Income Taxation 1961–1965 Rulings Volume, M.A. 399.

Often—perhaps usually—it will be more prudent for a trial court to await the return of an indictment before granting any relief. For in many cases the trial court may not be persuaded that the substantial risk facing the aggrieved person is a criminal prosecution, as distinguished from an administrative or civil proceeding.

Here, however, this Court is persuaded that indictment is probable, and that jurisdiction should be exercised.

Lord v. Kelley, 223 F.Supp. 684, 689 (D.C.Mass., 1963).

At this juncture this Court is not persuaded that indictment is probable—particularly if the prosecution of such indictment would require illegally seized documents.

Neither am I persuaded that the protective shield of the Court against such seizure need be withheld until after indictment.

The time at which the court's supervisory authority should be called into play in order to safeguard the "fundamental rights of [petitioners'] without [placing an] unnecessary strain on the general administration of justice," (Smith v. Katzenbach, supra, 351 F.2d at 817) appears to be when, if ever, the file is referred to the United States Attorney for presentation to a grand jury.

As a matter of policy, the Department of Justice will advise the petitioners, upon their request, if and when such reference occurs.

At such time, petitioners may make application to the court for an evidentiary hearing on their motion to suppress by giving not less than five (5) days notice to the United States Attorney.

Jurisdiction is retained for further proceedings not inconsistent with this memorandum.

So ordered.